**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| GAIA GARDENS, LLC, *et al*., | |
| Plaintiffs, | Civil Action No. 23-20733 (JXN) (CLW) |
| v. | **OPINION** |
| TOWNSHIP OF MONTCLAIR, | |
| Defendant. | |

**NEALS**, District Judge

This matter comes before the Court upon Plaintiffs Gaia Gardens LLC, Peter Paul Landscapers LLC, Al Greig Masonry, LLC Caruso Property Services, LLC, James Dyer Landscaping, LLC, E.C.M. Landscaping, Inc., Holmes Landscape, Inc., O. Mira Landscaping & Design LLC, Pilgrim Pruning LLC, R & J Land Care LLC, Simon J. Hamill, LLC, Joseph Bocchiaro d/b/a Bocchiaro Landscaping, Bob Fredette d/b/a Fredette Landscaping, Pasquale Gangala d/b/a Gangala Landscaping, John Michura d/b/a JD Lawncare, Lou Stancato d/b/a/Stancato Landscaping, Robert Golden and Riccardo Mancuso (collectively "Plaintiffs"), motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 (ECF No. 2), against Defendant the Township of Montclair ("Defendant" or "Montclair"). The Court has considered the submissions made in support of and in opposition to the motion and has heard oral argument. For the reasons set forth below, Plaintiffs' motion is **DENIED**.

## I.    BACKGROUND

Plaintiffs, consisting of fifteen landscaping companies doing business in Montclair and two Montclair residents, have filed federal and state constitutional challenges to two newly enacted Montclair Ordinances that ban the use of gas-powered leaf blowers in the Township.

On July 18, 2023, the Montclair Township Council introduced Ordinance O-23-31, entitled "To Prohibit the Use of Gas-Powered Leaf Blowers in the Township of Montclair" (the "First Ordinance"). (Verified Complaint ("Compl.") ¶ 1, ECF No. 1.) The First Ordinance regulates the use of leaf blowers in the Township, provides, for the first time, a total year-round ban on the use of gas-powered leaf blowers,[1] and imposes certain conditions on the use of electric leaf blowers. Specifically, the First Ordinance Provides:

3) Limitation on use of leaf blowers

    a) Gas-powered leaf blowers are not permitted to be used within the Township of Montclair, effective October 15, 2023.

    b) Electric leaf blowers shall be permitted throughout the year, subject to the following conditions:

        i) Air quality action days. Notwithstanding the aforementioned, leaf blowers shall not be operated in the Township of Montclair on dates designated as "Air Quality Action Days" by the New Jersey Department of Environmental Protection and declared by the Township's Emergency Management Coordinator.

        ii) No more than two leaf blowers of any kind (handheld, backpack, walk-behind or any combination thereof) shall be used at any one time on any property, exclusive of Township property, unless such property is greater than one acre in area.

        iii) No gas or diesel generators may be utilized to power any electric leaf blowers at any time.

    c) Hours of use.

        i. On weekdays between 9:00 a.m. and 6:00 p.m., except that leaf blowers may be used by an occupant or owner of the premises between 9:00 a.m. and 8:00 p.m.

        ii. On weekends between 10:00 a.m. and 6:00 p.m., except that leaf blowers may be used by an occupant or owner of the premises between 10:00 a.m. and 8:00 p.m.

---

[1] Montclair has had a seasonal ban on the use of gas-powered leaf blowers since 1996. (*See* Montclair Code, § 217-6.) The seasonal ban precluded the use of gas-powered leaf blowers during the summer months from May 15th to October 15th. The seasonal ban implicitly acknowledged the necessity of using gas-powered leaf blowers during the fall leaf season and spring cleanup. (ECF No. 2 at 8-9.)

(Compl., Ex. A, First Ordinance ¶ 3a-c.) The First Ordinance also limits the hours of use for leaf blowers, allowing premises' occupants or owners to use leaf blowers for two additional hours later in the day. (*Id.* ¶ 3c.)  The First Ordinance was adopted on August 15, 2023. (Compl. ¶ 4; Ex. A.)

On September 12, 2023, Montclair introduced Ordinance O-23-35 ("Second Ordinance," and together with the First Ordinance, the "Ordinances") that amends the First Ordinance by deleting Section 3(b)(ii), which limited the use of more than two electric leaf blowers at a time on a property and provided exemptions from that provision for Montclair and users on properties larger than one acre. (*See*, Compl, Ex B, Second Ordinance at 2.)  The Second Ordinance also clarified the violations and penalties provision, added a severability provision, and a provision that expressly repealed any ordinance, or part thereof, inconsistent with the Second Ordinance. (*See Id.* ¶¶ 6-8.) The Second Ordinance was adopted on September 26, 2023. (Compl. ¶ 4; Ex. B.)

The stated purpose and intent of the Ordinances is as follows:

The Township of Montclair hereby finds that the use of gas-powered leaf blowers impairs the health and social welfare, as well as the peace and quality of life of persons residing and working in Montclair. The purpose of this section is to eliminate the adverse impact of such equipment by prohibiting its use within the Township. This section shall apply to all properties within the Township whether publicly or privately owned.

The Township further finds that the practice of blowing leaves and other debris for property maintenance has unintended environmental and health consequences. The blowing of leaves, dust and debris, causes fine particulate emissions and disruption to pollinator habitats. Exposure to fine particulate matter may impact workers using this equipment, those living with respiratory conditions, children, as well as others, and the Township encourages community education regarding alternatives to such use, where possible. It shall be the policy of the Township to balance leaf blowing with mulching fallen leaves into grassy areas and moving leaves into flower beds to be used as organic mulch material.

(Compl., Exs. A ¶ 1 and B ¶ 1.)

On September 28, 2023, Plaintiffs filed a Verified Complaint ("Complaint") (ECF No. 1) and a Motion for Preliminary Injunction by Order to Show Cause ("OTSC") (ECF No. 2) against

Montclair. In the Complaint, Plaintiffs allege that Montclair's Ordinances are fraught with violations of the U.S. and New Jersey Constitutions. (Compl. ¶ 2.) Plaintiffs allege that the Ordinances violate (1) the Equal Protection Clause in their multiple discriminatory classifications of users (Counts One and Two); (2) the Supremacy Clause as they are preempted by federal law (Count Three); (3) and the Takings Clause as their regulations reduce the value and utility of Plaintiffs' property (Counts Four and Five); and the New Jersey Civil Rights Act N.J.S.A. 10:6–2 (c) (Count Six). (Compl. ¶¶ 2, 64-102.) Plaintiffs seek declaratory and injunctive relief and attorneys' fees and costs. (Compl. at 23-24.)

In their Motion for Preliminary Injunction, Plaintiffs seek to enjoin Montclair from enforcing the Ordinances, which are scheduled to go into effect a day apart from each other, the First Ordinance on October 15, 2023, and the Second Ordinance on October 16, 2023. (*See* Pls.' Br. at 4, 15, ECF No. 2-1.)

On September 28, 2023, the Court issued the parties an expedited briefing schedule on Plaintiffs' Preliminary Injunction Motion. (*See* ECF No. 3.)

On October 7, 2023, Montclair filed an opposition to Plaintiffs' Motion. (ECF No. 16.) Plaintiffs filed a reply in further support on October 10, 2023. (ECF No. 17.)

On October 12, 2023, the Court held Oral Argument on Plaintiffs' Motion. (ECF No. 19.)

## II.    LEGAL STANDARD

To obtain a preliminary injunction, the moving party must demonstrate: "(1) the reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured if relief is not granted. Moreover, the district court also should take into account, when relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *South Camden Citizens in Action v. N.J. Dep't of Envtl. Prot.*, 274 F.3d 771,

777 (3d Cir. 2001). "[A] district court—in its sound discretion—should balance those four factors so long as the party seeking the injunction meets the threshold on the first two." *Id.* (citing *Oburn v. Shapp*, 521 F.2d 142, 147 (3d Cir. 1975)). It follows that a "failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." *See id.* at 777 (citing *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982)). As a threshold matter, the Court, therefore, considers the first two prongs together. Only when a plaintiff has sufficiently met the first two prongs does the Court consider the third prong relating to the possibility of harm to other parties and evaluate whether the public interest is served by granting injunctive relief.

Where the relief ordered by the preliminary injunction is mandatory and will alter the status quo, the party seeking the injunction must meet a higher standard of showing irreparable harm in the absence of an injunction. *See Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008).

## III.    DISCUSSION

When reviewing a municipal action, New Jersey courts apply a presumption of validity and reasonableness to adopted ordinances. *Selvaggi v. Borough of Point Pleasant Beach*, No. CV 22-00708 (FLW), 2022 WL 1664623, at *12 (D.N.J. May 25, 2022) (citing *Lake Valley Assocs., LLC v. Twp. of Pemberton*, 411 N.J. Super. 501, 505 (App. Div.), *certif. denied*, 202 N.J. 43 (2010); *see also First Peoples Bank v. Twp. of Medford*, 126 N.J. 413, 418 (1991) ("[A] reviewing court should presume the validity and reasonableness of a municipal ordinance."). The New Jersey Supreme Court has advised courts to refrain from "pass[ing] on the wisdom of the ordinance; that is exclusively a legislative function." *Pheasant Bridge Corp. v. Twp. of Warren*, 169 N.J. 282, 290 (2001), *cert. denied*, 535 U.S. 1077 (2002). A party challenging an ordinance must demonstrate

that the ordinance, "in whole or in application to any particular property," is arbitrary, capricious, or unreasonable. *Id*. at 289–90 (citation and internal quotation marks omitted). Therefore, the "presumption of validity [cannot] be overcome unless the evidence clearly establishes its unreasonableness." *Twp. of Livingston v. Marchev*, 85 N.J. Super. 428, 432 (App. Div. 1964) (citing *Vickers v. Twp. Comm. of Gloucester Twp.*, 37 N.J. 232, 242 (1962)), *certif. denied*, 44 N.J. 412, *appeal dismissed*, 382 U.S. 201 (1965).

In their Complaint, Plaintiffs allege that Montclair's recently adopted Ordinances violate the Equal Protection Clause in their multiple discriminatory classifications of users; the Supremacy Clause as they are preempted by federal law; and the Takings Clause as their regulations reduce the value and utility of Plaintiffs' property. (*See generally* Compl.) The Court will address each argument in turn.

### A. *Likelihood of Success on the Merits*

To demonstrate a likelihood of success on the merits, a plaintiff must show that it "can win on the merits (which requires a showing of significantly better than negligible but not necessarily more likely than not)." *Riley v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). "[W]hether a party has met this threshold will necessarily vary with the circumstances of each case[.]" *Fresco Sys. USA, Inc. v. Hawkins*, 690 F. App'x 72, 77 (3d Cir. 2017). Notably, to establish a basis for preliminary injunctive relief, Plaintiffs need not show a likelihood of success as to every claim and every allegation outlined in their Verified Complaint. *Indo-American Cultural Soc'y v. Twp. of Edison*, 930 F. Supp. 1062, 1069 (D.N.J. 1996) (noting that the Court had earlier "ruled that plaintiff had demonstrated a likelihood of success on at least one of its claims and had enjoined defendants based on that finding."); *see also Arrowhead Gen. Ins. Agency, Inc. v. Lincoln Gen. Ins. Co.*, No. 16-1138, 2016 U.S. Dist. LEXIS 83492, at *16 n.4 (M.D. Pa. June 28, 2016) ("The

court need only determine that the moving party would likely succeed on at least one claim to issue injunctive relief.")

### 1. **Plaintiffs' Equal Protection Claims**

Plaintiffs allege that the Ordinances violate Equal Protection under the United States and New Jersey constitutions "by creating irrational discriminatory classifications." (Pls.' Br. at 2.) First, Plaintiffs assert that the First Ordinance exempts Montclair and leaf blower users on properties one acre or larger. (*Id*. at 17.) While Plaintiffs note that Montclair has removed this classification from the Second Ordinance, the First Ordinance is the current law and will remain so until the Second Ordinance takes effect on October 16, 2023. (Compl. ¶ 4.)[2] Plaintiffs also claim that the Ordinances include discriminatory classifications with respect to permissible usage hours by providing residents two hours more than landscapers to use leaf blowers each day, thereby depriving landscapers of 14 hours of use each week. (Pls.' Pr. at 18.) Lastly, Plaintiffs argue that the Ordinances discriminate between users of identical gas-powered generators as they prohibit landscapers from using generators to power or recharge an electric leaf blower while permitting other users, such as contractors or residents, to use the same generators as needed. (*Id*. at 22.) Plaintiffs allege these classifications are not rationally related to a proper legislative purpose and, therefore, fail equal protection analysis.

The Fourteenth Amendment to the United States Constitution prohibits any state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. The New Jersey Constitution confers an analogous right under Article I, 1. *See Doe v. Poritz*, 142 N.J. 1, 94 (1995). When considering an Equal Protection challenge under the U.S.

---

[2] Technically, because the First Ordinance does not go into effect until October 15, 2023, Montclair Code § 217-6, *see* n.1, *supra*, is arguably the current law.

Constitution, the court analyzes the challenged provision using one of three standards of review: strict scrutiny, intermediate scrutiny; or rational basis. *See Secure Heritage, Inc. v. City of Cape May*, 361 N.J. Super. 281, 299 (App. Div. 2003) (citing *Brown*, 356 N.J. Super. at 79). Strict scrutiny applies where an ordinance or other provision regulates a fundamental right or a suspect class. *Id*. Intermediate scrutiny applies when the government purports to regulate a semi-suspect class or substantially but indirectly affects a fundamental right. *Id*. All other classifications must survive rational basis review. *Id*. Here, Plaintiffs concede that the Ordinances should be subject to rational basis review because landscapers and Montclair residents are not suspect classes, and the use of gas-powered leaf blowers is not a fundamental right. (Pls.' Br. at 19.)

Under the rational basis test, a law does not "run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Armour v. City of Indianapolis*, 566 U.S. 673, 680 (2012) (quoting *Heller v. Doe by Doe*, 509 U.S. 312 (1993)). The challenged "legislation enjoys a presumption of validity, and [a] plaintiff *must negate every conceivable justification* for the classification in order to prove that the classification is wholly irrational." *Brian B. ex rel. Lois B. v. Pa. Dep't of Educ.*, 230 F.3d 582, 586 (3d Cir. 2000) (emphasis added). "[I]f there is any reasonably conceivable state of facts that could provide a rational basis for the classification," the policy survives. *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993); *Stradford v. Sec'y Pennsylvania Dep't of Corr.*, 53 F.4th 67, 77 (3d Cir. 2022).

Equal Protection analysis under the New Jersey Constitution involves a balancing test under which the court weighs three factors, "the nature of the right at stake, the extent to which the challenged statutory scheme restricts that right, and the public need for the statutory *restriction."* *Lewis v. Harris*, 188 N.J. 415, 443 (2006) (citing *Greenberg v. Kimmelman*, 99 N.J. 552, 567-68

(1985)). "The test is a flexible one, measuring the importance of the right against the need for the governmental restriction," *Lewis,* 188 N.J., at 488 (citing *Sojourner A. v. N.J. Dep't of Human Servs.,* 177 N.J. 318, 333 (2003), wherein each claim is examined "on a continuum that reflects the nature of the burdened right and the importance of the governmental restriction." *Id.* Accordingly, "the more personal the right, the greater the public need must be to justify governmental interference with the exercise of that right." *George Harms Constr. Co. v. N.J. Tpk. Auth.,* 137 *N.J.* 8, 29 (1994); *see also Taxpayers Ass'n of Weymouth Twp. v. Weymouth Twp.,* 80 N.J. 6, 43 (1976), *cert. denied,* 430 U.S. 977 (1977). Unless the public need justifies statutorily limiting the exercise of a claimed right, the State's action is deemed arbitrary. *Lewis,* 188 N.J. at 443–44; *see Robinson,* 62 N.J. at 491–92.

The New Jersey Supreme Court has applied traditional federal tiers of scrutiny to an equal protection analysis instead of a balancing test. "Where a statute does not treat a 'suspect' or 'semi-suspect' class disparately, nor affect a fundamental right [including a liberty interest], the provision is subject to a 'rational basis' analysis." *State v. Lagares,* 127 N.J. 20, 34, 601 A.2d 698 (citing *Dandridge v. Williams,* 397 U.S. 471 (1970)). Under this analysis, the government action only must be "rationally related to the achievement of a legitimate state interest." Ibid. (citing *Right to Choose v. Byrne,* 91 N.J. 287, 305 (1982); *see also Lewis,* 188 N.J. at 443). The Court has further stated that "although our mode of analysis [under the New Jersey Constitution] differs in form from the federal tiered approach, the tests weigh the same factors and often produce the same result." *Sojourner A. v. N.J. Dep't of Human Servs.,*177 N.J. at 333 (citing *Barone v. Dep't of Human Servs.,* 107 N.J. 355, 368 (1987)).

Here, the stated purpose and intent section in each of Montclair's Ordinances states in relevant part that

… the use of gas-powered leaf blowers impairs the health and social welfare, as well as the peace and quality of life of persons residing and working in Montclair. The purpose of this section is to eliminate the adverse impact of such equipment by prohibiting its use within the Township. This section shall apply to all properties within the Township whether publicly or privately owned.

The Township further finds that the practice of blowing leaves and other debris for property maintenance has unintended environmental and health consequences. The blowing of leaves, dust and debris, causes fine particulate emissions and disruption to pollinator habitats. Exposure to fine particulate matter may impact workers using this equipment, those living with respiratory conditions, children, as well as others, and the Township encourages community education regarding alternatives to such use, where possible. …

(Compl., Exs. A ¶ 1 and B ¶ 1.)

The Ordinances enunciate a legitimate interest in seeking to combat these health, welfare, and peace, and quality of life issues by regulating the use and operation of gas-powered and electric-powered leaf blowers. Montclair's first stated purpose appears to target the air pollutants and noise generated by gas-powered leaf blowers. The second references the threats arising from the fine particulate emissions generated by leaf blowing and encourages alternatives to leaf blowing altogether. The classifications in Montclair's Ordinances are rationally related to the legitimate government objectives as set forth in the Ordinances, namely protecting Montclair residents from the health hazards and nuisances caused by leaf blowers.

As stated by Plaintiffs during oral argument, Montclair's banning of gas-powered leaf blowers while at the same time permitting the use of electric leaf blowers seems contradictory because the threat of fine particulate emissions and their consequences remain. Plaintiffs pointed out a further inconsistency in the Ordinances' permitted use of generators for every other purpose but to power a leaf blower. It is not the Court's role, however, to "pass on the wisdom of the ordinance; that is exclusively a legislative function." *See Pheasant Bridge Corp.*, 169 N.J. at 290, *cert. denied*, 535 U.S. 1077 (2002). The banning of gas-powered leaf blowers bears a rational

relationship to the reduction of air pollutants and noise. The stated purpose of reduction of air pollutants and noise likewise provides a "conceivable justification" for the classification of gas-powered leaf blowers. *See Brian B. ex rel. Lois B.*, 230 F.3d at 586. The "presumption of validity [cannot] be overcome unless the evidence clearly establishes its unreasonableness." *Twp. of Livingston v. Marchev*, 85 N.J. Super. 428, 432 (App. Div. 1964) (citing *Vickers v. Twp. Comm. of Gloucester Twp.*, 37 N.J. 232, 242 (1962)), *certif. denied*, 44 N.J. 412, *appeal dismissed*, 382 U.S. 201 (1965). While Plaintiffs may take issue with the lines drawn by the Township in furtherance of these objectives, Plaintiffs have not satisfied their burden to demonstrate unreasonableness by way of clear evidence or the lack of a rational basis for these classifications. Thus, while the classifications made by its Ordinances may be imperfect, "[i]f the classifications have some 'reasonable basis,' they do not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality." *Dandridge,* 397 U.S. at 485. Further, the challenged "legislation enjoys a presumption of validity, and [a] plaintiff *must negate every conceivable justification* for the classification in order to prove that the classification is wholly irrational." *Brian B. ex rel. Lois B.*, 230 F.3d at 586 (emphasis added). Accordingly, Plaintiffs have not established a likelihood of success as to their Equal Protection claim.

## 2.  Plaintiffs' Takings Claims

Next, Plaintiffs allege that the Ordinances violate the Takings Clause of the U.S. and New Jersey Constitutions. (Pls.' Br. at 27.) Plaintiffs claim that the Ordinances' prohibition on the use of gas-powered leaf blowers purchased by its residents and landscapers working in Montclair, which complied with all federal and state laws when purchased, will now have "lost the value of that investment, or in other words, have suffered a taking for which they have received no

compensation." (*Id*. at 29.) Thus, Plaintiffs claim that Montclair's ban has resulted in a government taking of the Plaintiffs' property in violation of the U.S. and New Jersey Constitutions. (*Id*. at 27-28)

The Takings Clause of the Fifth Amendment of the United States Constitution prohibits the taking of private property "for public use, without just compensation." U.S. Const. Amend. V. The Takings Clause applies to state and local governments through the Fourteenth Amendment. *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 151 (3d Cir. 2018). Article I, Section 20 of the New Jersey Constitution states that "Private property shall not be taken for public use without just compensation. Individuals or private corporations shall not be authorized to take private property for public use without just compensation first made to the owners."

The clause is equally applicable to regulatory takings where there is no physical taking of property. Regulatory takings fall into two camps: (1) takings per se or total takings, where the regulation denies all economically beneficial productive use of the property, and (2) partial takings that, though not rendering the property idle, require compensation under the test set forth in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978); *see also Nekrilov v. City of Jersey*, 45 F.4th 662, 669 (3d Cir. 2022).

Here, the Court finds Plaintiffs' claim that the Ordinances effected a taking of their investment in their gas-powered leaf blowers does not meet a likelihood of success on the merits for various reasons. First, Plaintiffs' claim negates a "long line of" Supreme Court cases finding against Due Process and Takings Clause challenges to a State's use of its 'police powers' to enjoin a property owner from activities akin to public nuisances." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1022 (1992) (collecting cases); *see also Penn Cent. Transp. Co. v. New York City,* 438 U.S. 104, 125 (1978) (where State "reasonably concludes that 'the health, safety, morals, or

general welfare' would be promoted by prohibiting particular contemplated uses of land," compensation need not accompany prohibition). "A taking has not occurred simply because a plaintiff has been denied the most profitable use of the property." *Nekrilov*, 45 F.4th at 670. Likewise, "a reduction in the value of property is not necessarily equated with a taking." *Andrus v. Allard*, 444 U.S. 51, 66 (1979); *see also id*. at 67 ("'there was no appropriation of private property.)

Under *Penn Central*, the Court first assesses the economic impact of the regulation on the Plaintiffs. *See Nekrilov*, 45 F.4th at 672. The economic impact "is usually measured in terms of its effect on the value of the property." *Nekrilov*, 45 F.4th at 673. Plaintiffs did not quantify the Ordinances' alleged effect on the value of their property.  Without this, it is impossible for the Court to conduct any analysis or determine whether Plaintiffs may succeed on the merits of this claim. Plaintiffs' Takings claim is negated by the fact that the Ordinances do not prevent them from using their gas-powered leaf blowers outside of Montclair or selling them for value.

Second, the *Penn Central* test requires examination of the extent to which the Ordinances have interfered with the Plaintiffs' reasonable, distinct, investment-backed expectations. *Nekrilov*, 45 F.4th at 672. "'[D]istinct, investment-backed expectations are reasonable only if they take into account the power of the state to regulate in the public interest.'" *Nekrilov*, 45 F.4th at 674-75 (citation omitted). Plaintiffs did not provide the Court with any proof and did not state their investment-backed expectations. Moreover, Plaintiffs can continue to do work in Montclair using other means or methods and can use gas-powered leaf blowers outside of Montclair.

Third, the *Penn Central* test requires that the Court consider the "character of the governmental action." *Nekrilov* 45 F.4th at 672. This factor favors finding a taking only "when the interference with property can be characterized as a physical invasion by government, [rather] than

when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Id.* at 677 (quoting *Penn Cent.*, 438 U.S. at 124). "It is well settled that laws and regulations of this character, relating to the comfort, health, convenience, good order and general welfare of the inhabitants, though they may disturb the enjoyment of individual rights, are not unconstitutional, though no provision is made for compensation for such disturbances." *State v. Mundet Cork Corp.*, 8 N.J. 359, 371 (1952). Here, as noted above, the Ordinances seek to prevent nuisances and harms to the comfort, health, convenience, good order, and general welfare of those who reside and work in Montclair. (*See* Compl., Exs. A and B.) Thus, the Court does not find that there is taking of property by virtue of these Ordinances. Plaintiffs remain free to derive the economic benefit of their gas-powered leaf blowers by utilizing them outside Montclair or selling them. Accordingly, Plaintiffs have not established a likelihood of success as to their Takings claims.

### 3.  Plaintiffs' Supremacy Clause Claim

Lastly, Plaintiffs argue that the Ordinances' ban on gas-powered leaf blowers and gas-powered generators is preempted by the Clean Air Act, 42 U.S.C. §§ 7401-7671q (the "Clean Air Act") (Pls.' Br. at 9.)[3]  To that end, Plaintiffs contend that the Ordinances purportedly "constitute requirements related to the control of small engine emissions" that "are preempted by the express terms of the EPA regulations promulgated to enforce the [] Clean Air Act." (*Id.*)

The "Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, invalidates state law that interferes with or is contrary to federal law." *Farina v. Nokia, Inc.*, 625 F.3d 97, 115 (3d Cir. 2010) (citation and internal quotations omitted).  The Supremacy Clause mandates that "any state law, however clearly within a State's acknowledged power, which

---

[3] The Court refers to the ECF page numbers for the documents discussed herein.

interferes with or is contrary to federal law, must yield." *Kurns v. A.W. Chesterton Inc.*, 620 F.3d 392, 395 (3d Cir. 2010) (quoting *Free v. Bland*, 369 U.S. 663, 666 (1962)). "While the Supremacy Clause plainly provides Congress with the constitutional power to preempt state law, the challenge for courts has been deciding when a conflict between state and federal law requires application of that power." *Deweese v. Nat'l R.R. Passenger Corp. (Amtrak)*, 590 F.3d 239, 245 (3d Cir. 2009) (citing *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)); *CoreCivic, Inc. v. Murphy,* No. CV 23-967 (RK) (TJB), 2023 WL 5556025, at *14 (D.N.J. Aug. 29, 2023)

Preemption can occur in "three ways: (1) express preemption[4], (2) field preemption, and (3) conflict preemption." *Farina*, 625 F.3d at 115 (citation omitted). "Express preemption applies where Congress, through a statute's express language, declares its intent to displace state law." *Id.* (citation omitted). Field preemption "applies where the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id.* (citation and internal quotations omitted). Conflict preemption "nullifies state law inasmuch as it conflicts with federal law, either where compliance with both laws is impossible or where state law erects an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citation and internal quotations omitted). In analyzing a preemption claim, the Court must "start with the basic assumption that Congress did not intend to displace state law." *Id.* at 116 (citation and internal quotations and brackets omitted). The Court need only address whether the Ordinances are conflict preempted to determine Congress' intent here. "[T]he categories are not 'rigidly distinct.' Indeed, field pre-emption may be understood as a species of conflict pre-emption: A state law that falls within a preempted field conflicts with Congress' intent

---

[4] Though Plaintiffs argue only that the Ordinances are expressly preempted by the Clean Air Act (Pls.' Br. at 22-27), because Montclair contends that Plaintiffs also raise an "implicit preemption claim" (Montclair's Br. at 29), the Court addresses that argument as well.

... to exclude state regulation." *Treasurer of New Jersey v. U.S. Dep't of Treasury*, 684 F.3d 382, 406–07 (3d Cir. 2012) (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000)).[5]

The Clean Air Act "is a comprehensive federal law that regulates air emissions under the auspices of the United States Environmental Protection Agency ('EPA')." *Bell v. Cheswick Generating Station*, 734 F.3d 188, 190 (3d Cir. 2013) (citation omitted). As part of its stated purpose, the Clean Air Act provides that "A primary goal . . . is to encourage or otherwise promote reasonable Federal, State, and local governmental actions, consistent with the provisions of this chapter, for *pollution prevention*." 42 U.S.C.A. § 7401 (c) (West) (emphasis added). Plaintiffs argue that the Clean Air Act "grants the EPA authority to promulgate regulations necessary to limit emissions of air pollutants" (Pls.' Br. at 29 (citing 42 U.S.C. § 7601(a)), which includes "set[ting] standards relating to emissions from . . . gas-powered leaf blowers and other lawn and garden equipment." (Pls.' Br. at 29 (citing 42 U.S.C. §§ 7547, 7411)). In citing 40 C.F.R. Part 1074, Plaintiffs contend that states and municipalities:

> may not adopt or attempt to enforce any standard or other requirement applicable to the control of emissions from spark-ignition engines smaller than 50 horsepower, except standards of other requirements that were adopted by that state before September 1, 2003.

(Pls.' Br. at 31 (quoting § 1074.110(b).)

---

[5] The Court notes that Plaintiffs do not cite any authority where the Clean Air Act and EPA regulations "were determined to preempt local municipality restrictions on the use of gas-powered leaf blowers . . . ." (Montclair's Br. at 31). This, however, does not limit the Court's analysis. The Court also notes that EPA regulations, not just federal law, may preempt state and local law. *See Farina*, 625 F.3d at 115 ("Federal regulations preempt state laws in the same fashion as congressional statutes.") (citations omitted); *see also Fellner v. Tri-Union Seafoods, L.L.C.*, 539 F.3d 237, 243 (3d Cir. 2008) ("Where Congress has delegated the authority to regulate a particular field to an administrative agency, the agency's regulations issued pursuant to that authority have no less preemptive effect than federal statutes . . . .") (citation omitted).

Here, Plaintiffs claim that the "landscaping devices[,]" including gas-powered leaf blowers, all "have spark-ignition engines and are smaller than 50 horsepower." (Pls.' Br. at 31; *see also* Richard Leonardis's Sept. 25, 2023, Declaration ¶ 8, ECF No. 2-2.) Thus, Plaintiffs assert that Ordinances that "impose a standard/ban relating to the control of emissions are preempted by the Clean Air Act." (Pls.' Br. at 33.) Montclair does not dispute that § 1074.110(b) applies. Montclair contends, however, that the Ordinances are not preempted because they "in no way set limits or standards of emissions of air pollutants" and "regulate only the use and operation of leaf blowers . . . ." (Montclair's Br. at 28) (emphasis removed)[6].

In the First Ordinance, Montclair states that "[t]he blowing of leaves, dust and debris, causes fine particulate emissions and disruption to pollinator habitats." (Compl, Ex. A at ¶ 1.) And that the "purpose of this section is to eliminate the adverse impact of such equipment by prohibiting its use within the Township." (*Id.*) The exact wording is used in the Second Ordinance (Compl., Ex. B at ¶ 1.)

Here, the Court notes that Congress's intent in passing the Clean Air Act and, therein, empowering the EPA to promulgate regulations controlling the emissions of spark-ignition engines express "a sufficiently clear expression of congressional intent . . . ." *Cipollone v. Ligget Group, Inc.*, 789 F.3d 181, 186 (3d Cir. 1986); *see also Middlesex Cnty. Health Dep't v. Consolidated Rail Corp.*, No. 8-4547, 2008 WL 11510373, *2 (D.N.J. Dec. 17, 2008) ("Congress has vested the" EPA with "the authority to regulate emissions from locomotive engines under" the Clean Air Act.") (citation omitted).

---

[6] In a footnote, Montclair also cites *People v. Trolio*, 653 N.Y.S.2d 486, 488, 490 (Just. Ct. 1996), wherein the court found that a gas-powered leaf blower ban was not unconstitutional because it only "reduce[d] noise, air, water and solid waste pollution" and, therefore, was held to be based on "valid government objectives and is not unreasonable." (Montclair's Br. at 31 n.25). The Court does not find *Trolio* persuasive as it is non-binding and did not involve allegations that the law violated the Clean Air Act and/or related EPA regulations.

Courts have found implied federal preemption where federal law and related regulations set forth the appropriate safety standards. *See Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 367 (3d Cir. 1999). The EPA promulgated § 1074.110(b) to prevent States and municipalities from adopting standards that attempt to control emissions from spark-ignition engines like the devices here. In analyzing whether a municipal ordinance was preempted by state law, the New Jersey Supreme Court stated that "it is not enough that the Legislature has legislated upon a particular subject, for the question is whether the Legislature intended its action to preclude the exercise by local governments of the delegated police power." *Dome Realty, Inc., v. City of Paterson,* 83 *N.J.* 212, 232 (1980); *Summer v. Township of Teaneck,* 53 *N.J.* 548, 554 (1969).

The Court must determine, under a conflict preemption analysis, whether the Ordinances are preempted by § 1074.110(b) because they serve to "erect[] an obstacle to the accomplishment and execution of" the Clean Air Act and EPA. *See Deweese v. Nat'l R.R. Passenger Corp.*, 590 F.3d 239, 246 (3d Cir. 2009) ("While there is a recognized presumption against preemption, . . . conflicts that are implied by operation of state law are of no less force than that which is expressed.") (citations and internal quotations omitted). Stated differently, whether the ban is tantamount, equates to, or otherwise constitutes an "attempt to enforce any standard or other requirement applicable to the control of emissions" of the gas-powered leaf blowers. The purpose of § 1074.110(b) is to control the emissions of spark-ignition engines, which Montclair does not dispute, include the gas-powered leaf blowers and/or gas or diesel generators here. While Montclair certainly may exercise its police power when appropriate, that power "is superseded" when the "repugnance or conflict is so direct and positive that the two acts cannot be reconciled or consistently stand together." *MD Mall Associates, LLC v. CSX Transp., Inc.*, 715 F.3d 479, 495 (3d Cir. 2013) (citations and internal quotations omitted). "Hence, an ordinance will fall if it

permits what a statute expressly forbids or forbids what a statute expressly authorizes. Even absent such evident conflict, a municipality may be unable to exercise a power it would otherwise have if the Legislature has preempted the field." *Summer v. Township of Teaneck,* 53 *N.J.* 548, 554 (1969). But, it is not enough that the Legislature has legislated upon a particular subject, for the question is whether the Legislature intended its action to preclude the exercise by local governments of the delegated police power. *Dome Realty,* 83 *N.J.* at 232, 416 *A.*2d 334; *Summer,* 53 *N.J.* at 554.

When federal law regulates a field that the States have traditionally occupied, courts assume that "'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress.' " *Arizona v. United States*, 567 U.S. 387, 400 (2012) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)); *see also Wyeth v. Levine*, 555 U.S. 555, 565 (2009). This "presumption against preemption ... applies with particular force in fields within the police power of the state." *Farina*, 625 F.3d at 116 (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)); *see also CoreCivic,* No. CV 23-967 (RK) (TJB), 2023 WL 5556025, at *15. Regulations of "[h]ealth and safety issues have traditionally fallen within the province of state regulation." *See Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334 (3d Cir. 2009).

Here, the Clean Air Act, by its own terms, promotes "reasonable Federal, State, and local governmental actions, consistent with the provisions . . . for *pollution prevention*." 42 U.S.C.A. § 7401 (c) (West) (emphasis added).  This, coupled with the fact that the Ordinances address matters of health and safety, "which have traditionally fallen within the province of state regulation," *see Holk,* 575 F.3d 334, leads the Court to determine that the Ordinances are entitled to a "presumption against preemption." *Farina*, 625 F.3d at 116.  Arguably, because the Ordinances' stated purpose promotes pollution prevention and health and safety, it purportedly effectuates the Clean Air Act

and is complementary to the Act's primary purpose. Further, arguably, the Ordinances do not directly conflict with the Act's regulation such that they "cannot be reconciled or consistently stand together." Though § 1074.110(b) bars Montclair from creating ordinances that "enforce any standard" concerning the "control of emissions smaller than 50 horsepower," the Ordinances' outright ban does not alter the existing standards or prevent enforcement of those standards. Moreover, the Ordinances do not permit what the Clean Air Act expressly forbids or forbids what a statute expressly authorizes. *Summer,* 53 *N.J.* at 554.Thus, the Court finds that the Ordinances arguably are not preempted by the Clean Air Act or the related EPA regulations.

Accordingly, the Court finds that although Plaintiffs have advanced extensive federal legislation in the area, the evidence presented does not overcome a presumption of validity sufficient to demonstrate a likelihood of success on the merits of their Supremacy Clause claim.

**B. *Irreparable Injury***

While Plaintiff has failed to show a likelihood of success on the merits, the Court will nonetheless proceed to consider the irreparable injury requirement for the sake of completeness. "When it comes to this second factor, '[t]he law ... is clear in this Circuit: in order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.'" *ADP, Inc. v. Levin*, No. 21-2187, 2022 WL 1184202, at *2 (3d Cir. Apr. 21, 2022) (quoting *Siemens USA Holdings Ing v. Geisenberger*, 17 F.4th 393, 407-08 (3d Cir. 2021)).

The preliminary injunction must be the only way of protecting the plaintiff from harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (internal quotation marks and citation omitted). Additionally, "[t]he 'requisite feared injury or harm must be irreparable—not merely serious or substantial,' and it 'must be of a peculiar nature, so that

compensation in money cannot atone for it.'" *Id.* at 91–92 (quoting *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987)).

Plaintiffs argue that without this Court's intervention, they will suffer immediate and irreparable harm when provisions within the Ordinances go into effect. (Pls' Br. at 31.) Specifically, Plaintiffs claim the continued operation of the Plaintiffs' business is threatened as the use of gas-powered leaf blowers is critical to the business of landscape contractors, especially essential during the fall leaf season. (*Id.* at 33.) Plaintiffs also claim that without the ability to use gas-powered leaf blowers, contractors would be left with little choice but to use manual methods, which take significantly more time and are less efficient, dramatically affecting their business and income. (*Id.* at 33.)

Defendants argue that Plaintiffs' claim of "harm" is one for economic loss, which does not suffice as irreparable harm. *See Tenny J. Commc'ns, Inc. v. Verizon New Jersey Inc.,* No. 219CV19183JXNAME, 2021 WL 3930717, at *5 (D.N.J. Sept. 1, 2021). The Court agrees.

Here, the Court finds that a preliminary injunction is inappropriate because Plaintiffs have not established that their alleged harm cannot be redressed by a legal remedy and that it cannot be compensated by monetary damages. Plaintiffs' alleged harm to its business is economic. "It is well settled that economic loss does not constitute irreparable harm." *Tenny*, 2021 WL 3930717, at *5 (citing *Acierno v. New Castle City.*, 40 F.3d 645, 653 (3d Cir. 1994). In order to demonstrate irreparable harm, Plaintiffs must demonstrate potential harm that cannot be redressed by a legal or an equitable remedy following a trial. (*See id.*) The "loss of potential business opportunities, profits, customers, or contracts is compensable by money damages and does not constitute irreparable injury." *Apollo Tech. Corp. v. Centrosphere Indus. Corp.,* 805 F. Supp. 1157, 1209 (D.N.J. 1992) (*citing Instant Air,* 882 F.2d at 801; *Frank's GMC Truck Center, Inc. v. General*

*Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988); *In re Arthur Treacher's Franchisee Litigation*, 689 F.2d at 1141). The Third Circuit has observed that "even when an action will result in the destruction of a business," a district court's refusal to grant a preliminary injunction is appropriate when the loss is "capable of ascertainment and award at final judgment." *Figueroa v. Precision Surgical, Inc.*, No. 10–4449, 2011 WL 1368778, at 5 (3d. Cir. Apr. 12, 2011) (unpublished) (quoting *Instant Air*, 882 F.2d at 801)). The possibility that adequate compensatory or other corrective relief will be available in the ordinary course of litigation weighs heavily against a claim of irreparable harm. The Court finds that the alleged harm Plaintiffs allege here is compensable by monetary damages.

Consistent with Third Circuit precedent, this Court need not analyze every factor of the preliminary injunction analysis because Plaintiff has not established a risk of irreparable harm. *See Beberman v. United States Department of State*, 675 Fed. Appx. 131, 135 (3d. Cir. 2017) (stating that "[b]ecause [plaintiff] has not established a risk of irreparable harm, the District Court did not act outside of its discretion in denying her motion for a preliminary injunction."); *Am. Express Travel Related Servs., Inc. v. Sidamon–Eristoff*, 669 F.3d 359, 374 (3d Cir. 2012) (declining to address the remaining preliminary injunction factors when the plaintiff failed to meet one factor).

## IV.    CONCLUSION

For the preceding reasons, Plaintiffs' Motion for a Preliminary Injunction (ECF No. 2) is **DENIED**. An appropriate Form of Order accompanies this Opinion.

**DATED**: October 14, 2023

**JULIEN XAVIER NEALS**
**United States District Judge**