**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| GAIA GARDENS, LLC; R & J LAND CARE LLC; BOB FREDETTE d/b/a FREDETTE LANDSCAPING; and RICCARDO MANCUSO,<br><br>Plaintiffs,<br><br>v.<br><br>TOWNSHIP OF MONTCLAIR,<br><br>Defendant. | Civil Action No. 23-20733 (JXN)(CF)<br><br><u>**OPINION**</u> |

<u>**NEALS**</u>, District Judge

Before the Court is Defendant Township of Montclair's ("Montclair") motion to dismiss Plaintiffs Gaia Gardens, LLC, R&J Land Care LLC, Bob Fredette d/b/a Fredette Landscaping, and Riccardo Mancuso's (collectively "Plaintiffs") Amended Complaint pursuant to Federal Rule of Civil Procedure[1] 12(b)(6). (ECF No. 61.) Plaintiffs opposed the motion (ECF No. 79), and Montclair replied in further support (ECF No. 81). Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b). The Court has carefully reviewed the Amended Complaint and the parties' submissions and decides this matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, Montclair's motion to dismiss is **GRANTED**.

---

[1] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

## I.     **BACKGROUND**[2]

The Court presumes the parties' familiarity with this matter, and therefore recites only those facts relevant to this motion. *See Gaia Gardens, LLC v. Township of Montclair*, No. 23-3026, 2024 WL 5199327 (3d Cir. Dec. 23, 2024); *Gaia Gardens, LLC v. Township of Montclair*, No. 23-20733, 2025 WL 2374417 (D.N.J. Aug. 15, 2025).

Plaintiffs, three landscaping companies doing business in Montclair and a Montclair resident, challenge a Montclair ordinance that limits the use of gas-powered leaf blowers. (*See generally* Am. Compl., ECF No. 55.) For many years, through ordinance, Montclair has relegated the use of gas-powered leaf blowers to specific months and hours of the day. *See Gaia Gardens*, 2024 WL 5199327, at *1. On August 15, 2023, the Montclair Council introduced and approved Ordinance O-23-31, which, among other things, prohibited the use of gas-powered leaf blowers within Montclair, imposed hourly restrictions on the use of electric leaf blowers, and prohibited the use of gas or diesel generators to power electric leaf blowers. (Am. Compl. ¶ 26.) On September 26, 2023, Montclair amended Ordinance O-23-31 by Ordinance O-23-35[3] ("Ordinance"). (*Id*.; Am. Compl. Ex. A ("Ordinance"), ECF No. 55-1.)

The Ordinance describes its "Purpose and intent" as follows:

> The Township of Montclair hereby finds that the use of gas-powered leaf blowers impairs the health and social welfare, as well as the peace and quality of life of persons residing and working in Montclair. The purpose of this chapter is to eliminate the adverse impact of such equipment by prohibiting its use within the Township. This chapter shall apply to all properties within the Township whether publicly or privately owned.
>
> The Township further finds that the practice of blowing leaves and other debris for property maintenance has unintended environmental

---

[2] When reviewing a motion to dismiss, a court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[3] Codified at Montclair Municipal Code § 219.

and health consequences. The blowing of leaves, dust and debris, causes fine particulate emissions and disruption to pollinator habitats. Exposure to fine particulate matter may impact workers using this equipment, those living with respiratory conditions, children, as well as others, and the Township encourages community education regarding alternatives to such use, where possible. It shall be the policy of the Township to balance leaf blowing with mulching fallen leaves into grassy areas and moving leaves into flower beds to be used as organic mulch material.

(Ordinance § 219-1.)

§ 219-2 of the Ordinance defines a "Gas-Powered Leaf Blower" as either "[a] leaf blower that is powered by an engine using gasoline or a mixture of gasoline and oil blend as fuel," or "[a]n electric-powered leaf blower that is plugged into an operating generator that is powered by an engine using gasoline or a mixture of gasoline and oil blend as fuel." (*Id*. § 219-2(b).)

The Ordinance provides for a "Limitation on use of leaf blowers," both electric and gas-powered, within Montclair as follows:

a) Gas-powered leaf blowers are not permitted to be used within the Township of Montclair, effective October 15, 2023.
b) Electric leaf blowers shall be permitted throughout the year, subject to the following conditions:
   i) Air quality action days. Notwithstanding the aforementioned, leaf blowers shall not be operated in the Township of Montclair on dates designated as "Air Quality Action Days" by the New Jersey Department of Environmental Protection and declared by the Township's Emergency Management Coordinator.
   ii) No gas or diesel generators may be utilized to power any electric leaf blowers at any time.
c) Hours of use.
   i) On weekdays between 9:00 a.m. and 6:00 p.m., except that leaf blowers may be used by an occupant or owner of the premises between 9:00 a.m. and 8:00 p.m.
   ii) On weekends between 10:00 a.m. and 6:00 p.m., except that leaf blowers may be used by an occupant or owner of the premises between 10:00 a.m. and 8:00 p.m.

(*Id.* § 219-3.)

3

On September 28, 2023, Plaintiffs filed a Complaint (Compl., ECF No. 1) and an Order to Show Cause ("OTSC") for a preliminary injunction pursuant to Rule 65 (Mot. for Prelim. Inj., ECF No. 2). Plaintiffs alleged the Ordinance violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; Article I of the New Jersey Constitution; the Supremacy Clause of Article VI, § 2 of the United States Constitution; the Takings Clause of Article V of the United States Constitution; the Takings Clause of Article I, § 20 of the New Jersey Constitution; and the New Jersey Civil Rights Act, N.J.S.A. 10:6-2(c). (*See generally* Compl.) In their OTSC, Plaintiffs sought a preliminary injunction to restrain Montclair's enforcement of the Ordinance. (*See generally* Mot. for Prelim. Inj.)

On October 14, 2023, the Court denied Plaintiffs' motion for a preliminary injunction, concluding Plaintiffs failed to show a likelihood of success on the merits or the threat of irreparable injury. (*See generally* Op, ECF No. 21; Order, ECF No. 22.) First, the Court found that the Ordinance was likely not preempted by the Clean Air Act ("CAA" or "Act"), 42 U.S.C. § 7401, *et seq.*, because the Ordinance concerns traditional state health and safety regulation, is entitled to a presumption against preemption, and arguably complements rather than conflicts with the CAA or U.S. Environmental Protection Agency ("EPA") regulations despite imposing an outright ban on gas-powered leaf blowers. (*See* Op. at 6–20.) Additionally, the Court determined that Plaintiffs did not establish that their alleged harm could not be redressed by a legal remedy or compensated with monetary damages. (*Id.* at 21–22.)

Plaintiffs appealed on November 13, 2023 (Not. of Appeal, ECF No. 27), and the matter was stayed pending the outcome. (Stay Ord., ECF No. 31). On December 23, 2024, the Third Circuit affirmed. *See Gaia Gardens*, 2024 WL 5199327, at *2. The Third Circuit reasoned that Plaintiffs failed to demonstrate irreparable harm, as their alleged injuries were economic and

compensable through monetary damages, and, therefore, this Court did not abuse its discretion in declining to enjoin enforcement of the ordinance. *Id*. This Court implemented the Third Circuit's decision and lifted the stay. (ECF No. 45.)[4]

On June 4, 2025, Plaintiffs moved for leave to amend the complaint[5] (Mot. for Leave, ECF No. 48), which Magistrate Judge Waldor (ret.) granted. (M.J. Op., ECF No. 53; M.J. Order, ECF No. 54).

Plaintiffs filed the Amended Complaint on August 20, 2025, removing all but the four remaining Plaintiffs and keeping only their preemption claim. (Am. Compl., ECF No. 55.) The Amended Complaint asserts that the Ordinance imposes a zero-emissions standard preempted by the CAA under theories of both implied and express preemption, violating the Supremacy Clause. (*Id*. ¶¶ 32–37.)

On October 13, 2025, Montclair moved to dismiss the Amended Complaint under Rule 12(b)(6), arguing that neither the CAA nor the EPA regulations expressly or impliedly preempt the Ordinance. (Def.'s Mot., ECF No. 61.) Plaintiffs opposed the motion (Pls.' Opp'n Br., ECF No. 79), and Montclair replied in further support (Def.'s Reply, ECF No. 81).[6] This motion is now fully briefed and ripe for the Court to decide.

---

[4] On January 6, 2025, the Court was notified that Plaintiffs' counsel had passed away. (ECF No. 34.) Plaintiffs retained new counsel at the end of March 2025. (*See* ECF Nos. 36, 39–41, 44.)

[5] Montclair opposed the motion (Montclair Opp'n to Leave, ECF No. 49) and filed a cross motion for attorneys' fees (Mot. for Att'y Fees; ECF No. 50). Plaintiffs filed a reply in further support of their motion and responded to Montclair's cross motion. (Pls.' Reply for Leave, ECF No. 52.)

[6] On November 17, 2025, Plaintiffs filed a cross-motion for summary judgment and Opposition to Montclair's motion to dismiss the Amended Complaint (Pls.' Cross-Mot, ECF No. 72), which the Court denied as premature. (*See* Text Order, ECF No. 77).

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under this rule, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, "[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (alteration in original)(citations omitted). A court must only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

The Third Circuit has outlined a three-part test in deciding a motion to dismiss pursuant to Rule 12(b)(6):

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (cleaned up).

## III.    DISCUSSION

Plaintiffs assert that § 209(e) of the CAA, codified at 42 U.S.C. § 7543(e)(1), both expressly and impliedly preempts state and local emissions standards and the enforcement thereof

on small nonroad engines, including leaf blowers. (Am. Compl. ¶ 15; Pls.' Opp'n Br. at 1.) In Plaintiffs' telling, the Ordinance forbids the use of gas-powered leaf blowers and mandates that any leaf blower used in Montclair have a zero-emission electric-powered engine. (Pls.' Opp'n Br. at 2.) In doing so, Plaintiffs assert the Ordinance unlawfully imposes an emission standard on leaf-blower engines. (*Id.*) Accordingly, Plaintiffs contend that they sufficiently plead a violation of the Supremacy Clause under the CAA. (*Id.*)

In support of the motion to dismiss, Montclair asserts three primary arguments against preemption. First, Montclair argues the Ordinance addresses public health, safety, and welfare— matters traditionally within the province of state regulation. (Def.'s Moving Br. at 1–3, ECF No. 61-3.) Second, Montclair contends the Ordinance is not a "standard or other requirement related to the control of emissions" within the meaning of § 209(e) of the CAA. (*Id.*) Third, Montclair states the Ordinance is an "in-use" and "use and operation" regulation on nonroad engines, which Congress has explicitly clarified is not preempted by the CAA and related EPA regulations. (*Id.*)

Montclair further argues that § 209(e)(1)'s preemptive effect extends only to two categories of engines, neither of which includes leaf blowers. (*Id.* at 15–18.) Montclair submits that § 209(e)(1), by its plain language, does not preempt the Ordinance. (*Id.*) Indeed, Montclair asserts that § 209(e)(2) does not contain any express preemption language at all; rather, it provides California with the opportunity to request authorization from the EPA to "adopt and enforce standards and other requirements relating to the control of emissions" from nonroad engines and vehicles, 42 U.S.C. § 7543(e)(2)(A), and allows other states to opt-in (by application) to authorized California standards relating to the control of emissions, 42 U.S.C. § 7543(e)(2)(B). (*Id.* at 15–16.) Montclair further argues that the Ordinance falls outside the scope of implied preemption because

the Ordinance does not enforce a "standard or other requirement relating to the control of emissions." (*Id.* at 16.)

Under the Supremacy Clause, courts may not give effect to "any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law." *Kurns v. A.W. Chesterton Inc.*, 620 F.3d 392, 395 (3d Cir. 2010) (quoting *Free v. Bland*, 369 U.S. 663, 666 (1962)). "In cases like the present one, courts are called upon to determine whether an act of Congress preempts state law." *Id.* When Congress delegates regulatory authority to an administrative agency, the agency's regulations "issued pursuant to that authority" have the same preemptive effect as federal statutes. *Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 406 (3d Cir. 2012).

There are three kinds of preemption: express preemption, implied conflict preemption, and field preemption. *Kurns*, 620 F.3d at 395. Express preemption means "a federal law contains express language providing for the preemption of any conflicting state law." *Id.* Implied conflict preemption arises when (a) "compliance with both state and federal law is impossible," or (b) "state law erects an 'obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Treasurer of N.J.*, 684 F.3d at 406 (quoting *Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010)). Field preemption occurs "when Congress has regulated an area so pervasively that it has not left room for state regulation." *Id.*

Two principles guide the Court's inquiry. First, Congress's intent "is the 'ultimate touchstone' of preemption analysis." *Transource Pa., LLC v. DeFrank*, 156 F.4th 351, 372 (3d Cir. 2025) (quoting *Farina*, 625 F.3d at 115). "Congress's purpose may be apparent from the face of a statute." *Id.* The Court may also consider the "'structure and purpose of the statute as a whole,' analyzing 'the way in which Congress intended the statute and its surrounding regulatory scheme

8

to affect business, consumers, and the law.'" *Id.* (quoting *Farina*, 625 F.3d at 115). Second, the Court presumes "Congress did not intend to displace state law." *Farina*, 625 F.3d at 116 (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)). This presumption against preemption "applies with particular force in fields within the police power of the state, but does not apply where state regulation has traditionally been absent." *Id.* (citations omitted).

### A.     The CAA Preempts State Emissions Standards

The CAA declares it "[a] primary goal . . . to encourage or otherwise promote reasonable Federal, State, and local governmental actions . . . for pollution." 42 U.S.C. § 7401(c). Title I of the CAA addresses primarily stationary sources, leaving substantial regulatory authority with the States. *See* 42 U.S.C. § 7410. Title II addresses moving sources—motor vehicles under § 209(a), 42 U.S.C. § 7543(a), and nonroad engines and vehicles used in construction or farm equipment under § 209(e), 42 U.S.C. § 7543(e). For the latter category, Congress provided:

> No State or any political subdivision thereof shall adopt or attempt to enforce any standard or other requirement relating to the control of emissions from either of the following new nonroad engines or nonroad vehicles subject to regulation under this chapter—
>
> (A)New engines which are used in construction equipment or vehicles or used in farm equipment or vehicles and which are smaller than 175 horsepower.
>
> (B)New locomotives or new engines used in locomotives.

42 U.S.C. § 7543(e)(1)(A)–(B).

§ 209(e)(2) applies to all other nonroad engines, including the small off-road engines used in leaf blowers. It provides that: "Any State other than California . . . may adopt . . . standards relating to control of emissions from [all other] nonroad vehicles or engines," so long as those standards "are identical . . . . to the California standards." 42 U.S.C. § 7543(e)(2)(A)–(B). § 209(e) does not, on its face, address State authority to regulate the use of those engines *after* they enter

commerce. EPA, the agency charged with administering the CAA, has long maintained that no such preemption exists, explaining that "states are not precluded under 42 U.S.C. § 7543 from regulating the *use and operation* of nonroad engines, such as regulations on hours of usage, daily mass emission limits, or sulfur limits on fuel." 40 C.F.R. § 1074, subpt. A, app. A (emphasis added).

**B.      The Presumption Against Preemption Applies**

The Supremacy Clause allows Congress to preempt state law. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). But, "because the States are independent sovereigns in our federal system, [courts] have long presumed that Congress does not cavalierly pre-empt state-law causes of action." *Farina*, 625 F.3d at 116 (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). The Court's preemption analysis, therefore, "start[s] with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Lohr*, 518 U.S. at 485 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). The presumption against preemption "applies with particular force in fields within the police power of the state, but does not apply where state regulation has traditionally been absent." *Farina*, 625 F.3d at 116. Even where federal law has an express preemption clause, if it is susceptible to more than one plausible reading, the Court has "a duty to accept the reading that disfavors pre-emption." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005).

State police power "extends beyond health, morals and safety, and comprehends the duty, within constitutional limitations, to protect the well-being . . . of a community." *N.J. Staffing All. v. Fais*, 110 F.4th 201, 209 (3d Cir. 2024) (quoting *Kovacs v. Cooper*, 336 U.S. 77, 83 (1949)). "Legislation designed to free from pollution the very air that people breathe clearly falls within

the exercise of even the most traditional concept of what is compendiously known as the police power." *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 442 (1960). Because the Ordinance is designed to protect the public health, welfare, and the environment, the presumption against preemption applies with "particular force." *Farina*, 625 F.3d at 116.

Plaintiffs argue that (1) the CAA's distinction between Title I and Title II rebuts the presumption against preemption, and (2) the presumption is "irrelevant" here because the CAA's preemption of mobile-source emissions is "clear and manifest" on the face of § 209(e). (Pls.' Opp'n Br. at 18–21.) Plaintiffs further argue that "no rational reading" of § 209(e) "could fail to identify that th[e] section unambiguously preempts state regulation of mobile emissions." (*Id.* at 20.) Both arguments are unpersuasive.

### i.    *The Distinction Between Titles I and II*

Plaintiffs argue that the CAA's distinction between Title I and Title II rebuts the presumption against preemption. According to Plaintiffs, Title I grants States the power to regulate stationary emissions sources, while Title II is the "principal" province of the federal government as to mobile-source emissions. (*See* Am. Compl. at 8–10.) Plaintiffs cite *Engine Manufacturers Ass'n v. South Coast Air Quality Management District* ("*EMA*"), in which the Supreme Court ruled that a California air quality agency may not indirectly regulate vehicle emissions by restricting the purchase of certain vehicles, as such restrictions constitute an emissions standard under § 209(a), a field expressly preempted and governed by federal law. 541 U.S. 246 (2004).

*EMA* does not rebut the presumption against preemption. *EMA* dealt with § 209(a), not § 209(e). § 209(a) bars states from regulating "any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines." 42 U.S.C. § 7543(a). § 209(e) is narrower and more textured; specifically, § 209(e)(1) reaches only three enumerated categories of equipment

11

(none of which is a leaf blower), and § 209(e)(2) governs all other nonroad engines through a California-authorization regime.

Plaintiffs ask this Court to assume that, because *EMA* held that California's fleet purchase rules were "standards" under § 209(a), a municipal leaf blower ordinance is also a "standard" under § 209(e). Adopting Plaintiffs' argument would require the Court to treat § 209(a), which deals with new motor vehicle engines, and § 209(e), which regulates nonroad engines, as interchangeable. They are not. Thus, the dispositive question is whether the Ordinance imposes a 'standard or other requirement relating to the control of emissions' within the meaning of § 209(e). 42 U.S.C. § 7543(e).

### ii.    § 209(e)

§ 209(e) does not demonstrate a "clear and manifest" intent to preempt ordinances like the one at issue here. § 209(e) has a deliberately textured structure. § 209(e)(1) preempts only new engines used in three enumerated equipment categories, none of which plainly encompasses leaf blowers. 42 U.S.C. § 7543(e)(1). § 209(e)(2) contains no express preemption language: it simply allows "[a]ny State other than California . . . [to] adopt . . . standards relating to control of emissions from [all other] nonroad vehicles or engines," so long as those standards "are identical . . . . to the California standards." 42 U.S.C. § 7543(e)(2)(A)–(B). Because neither subsection on its face evidences a clear and manifest intent to displace a state's authority to regulate the conditions of equipment use within its borders—a subject historically and quintessentially within the police power—the presumption against preemption applies. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).

Plaintiffs' cited authorities do not compel a different result. *Crosby* reiterates that Congress can preempt state law. 530 U.S. at 372. But it does not mean Congress *has* preempted state law here. Moreover, *CSX Transportation, Inc. v. Easterwood* notes that the plain text of an express

12

preemption clause is the starting point of a preemption analysis. 507 U.S. 658, 664 (1993). But it does not mean that the plain text of *this* express preemption clause applies to the Ordinance. The other cases Plaintiffs cite, *Federal Housing Finance Agency v. City of Ansonia*, 549 F. Supp. 3d 242 (D. Conn. 2021), and *Pennsylvania General Insurance Co. v. Landis*, 96 F. Supp. 2d 408 (D.N.J. 2000), involved entirely different and distinct federal laws. *See Ansonia*, 549 F. Supp. 3d at 247–48 (Housing and Economic Recovery Act); *Landis*, 96 F. Supp. 2d at 413–18 (Federal Hazardous Substances Act). To the extent those decisions stand for the proposition that a court need not invoke the presumption when text is unambiguous, Plaintiffs assume what they must establish: that the text of § 209(e)(2) is unambiguous as applied to the Ordinance. Plaintiffs' citation to *Engine Manufacturers Ass'n v. EPA*, 88 F.3d 1075 (D.C. Cir. 1996), is similarly unavailing. There, the court noted § 209(e)(2) "does *not* expressly preempt any state regulation." *Id.* at 1087 (emphasis added).

Plaintiffs also frame their argument in field and conflict preemption terms. (Pls.' Opp. Br. at 22–23.) Those theories offer little support to rebut the presumption against preemption in this case. Field preemption requires a federal regulatory scheme so pervasive as to make reasonable the inference that Congress "left no room" for the States to supplement it. *Hillsborough County v. Automated Med. Laby's, Inc.*, 471 U.S. 707, 713 (1985). § 209(e)'s text carefully limits express preemption to three enumerated equipment categories and to standards on *new* nonroad engines, while preserving (e)(2)'s California-conformity regime for other categories. It is the antithesis of a comprehensive field occupation.

Conflict preemption requires that compliance with both state and federal law be impossible, or that state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Lozano v. City of Hazleton*, 724 F.3d 297, 303 (3d Cir. 2013) (quoting

13

*Arizona v. United States*, 567 U.S. 387, 399 (2012)). No such conflict exists here, because federal law does not require the *use* of gas-powered leaf blowers anywhere; CAA Title II regulates engines, not the choice to operate them.

The Court, therefore, applies the presumption against preemption to § 209(e)(2) and the Ordinance.[7] The Court's analysis proceeds on that basis.

### C.    The Ordinance Is Not an Emissions Standard

Because leaf blower engines are neither motor vehicle engines, nor "new" nonroad engines, § 209(e)(2) applies. § 209(e)(2) provides that: "Any State other than California . . . may adopt . . . standards relating to control of emissions from [all other] nonroad vehicles or engines," so long as those standards "are identical . . .  to the California standards." 42 U.S.C. § 7543(e)(2)(A)–(B). While § 209(e)(2) does not expressly preempt any state regulation, it does "imply a preemption." *Engine Mfrs. Ass'n*, 88 F.3d at 1087. If § 209(e)(2) did not displace any State "standards relating to control of emissions from nonroad vehicles or engines," there would be no need to require that those standards be identical to California's regulations. § 209(e)(2) thus "assumes the existence of a category of [regulations] that are subject to preemption." *Id.* The plain text of § 209(e)(2), therefore, impliedly preempts (a) any "standards relating to control of emissions from [all other] nonroad vehicles or engines"; (b) that are adopted by states other than California; and (c) are not identical to California's standards. 42 U.S.C. § 7543(e)(2)(A)–(B).

The Court, then, turns to the central issue: whether the Ordinance imposes a "standard or other requirement relating to the control of emissions" within the meaning of § 209(e). To answer that question, the Court looks to *EMA*. As the *EMA* Court observed, "standard" means "that which 'is established by authority, custom, or general consent, as a model or example; criterion; test.'"

---

[7] The Court notes that, even if the presumption did not apply, the Court would nonetheless "have a duty to accept the reading [of the CAA] that disfavors pre-emption." *Bates*, 544 U.S. at 449.

14

*EMA*, 541 U.S. at 252–53 (quoting Webster's Second New International Dictionary 2455 (1945)). The "standards" referred to in § 209(e) "relate to the emission characteristics of a vehicle or engine." *Id.* at 253. To meet those standards, "the vehicle or engine must not emit more than a certain amount of a given pollutant, must be equipped with a certain type of pollution-control device, or must have some other design feature related to the control of emissions." *Id.* A "standard" need not be expressed as a numerical limit at the point of manufacture; an enforcement mechanism that tells regulated parties they must "buy or sell only those vehicles that comply" with a numerical or technology specification is also a "standard." *Id*. at 255. And a "standard," the *EMA* Court found, remains "a standard even when not enforced through manufacturer-directed regulation." *Id*.

The premise of *EMA*, however, was that an underlying standard (i.e., a numerical or technological requirement that engines or vehicles must meet) existed. There, state law required regulated entities to purchase or lease vehicles that satisfied the California Air Resources Board's emission specifications. *Id*. at 248–49. Similarly, in *Pacific Merchant Shipping Ass'n v. Goldstene*, the rules at issue "explicitly prohibit[ed] the operation of auxiliary diesel engines 'which emit[ted] levels of diesel PM, NOx, or SOx in exceedance of the emission rates' that would result from the use of certain fuels." 517 F.3d 1108, 1114 (9th Cir. 2008). And in *Metropolitan Taxicab Board of Trade v. City of New York*, the preempted rules, which "effectively force[d] [taxi companies] to purchase hybrid taxicabs," and had "the stated purpose of increasing the number of 'cleaner vehicles.'" 633 F. Supp. 2d 83, 88, 105 (S.D.N.Y. 2009), *aff'd,* 615 F.3d 152 (2d Cir. 2010).

The Ordinance, by contrast, does not impose a quantifiable emissions limit, require pollution-limiting equipment or after-treatment specification, or dictate engine-emissions criteria. Nor does the Ordinance even reference engine emissions. At most, the Ordinance notes that "[t]he

15

*blowing of leaves, dust and debris*, causes fine particulate emissions." (*See* Ordinance § 219-1.) And the Ordinance restricts *all* leaf-blower use to specific hours and days, even though electric leaf blower engines do not give off emissions. Accordingly, the Ordinance concerns the public-health and quality-of-life consequences of blowing leaves rather than emissions of leaf blower engines. Thus, the Ordinance, by its own terms, regulates leaf-blowing,[8] not the engines that perform it. (*See* Ordinance § 219-3.)

Plaintiffs argue nonetheless that the Ordinance is a preempted "attempt to enforce a standard" because, in effect, the only blowers that may be used in Montclair are those whose engines produce zero emissions. (Pls.' Supp. Br. at 21–25.) This characterization does not survive close examination. As the Supreme Court held in *EMA*, the CAA preempts a use restriction only when it attempts to enforce an underlying "standard." 541 U.S. at 255 ("The manufacturer's right to sell federally approved vehicles is meaningless in the absence of a purchaser's right to buy them."). Here, the Ordinance does not provide an underlying emissions standard to enforce, rather it restricts leaf blower use within Montclair.

More fundamentally, § 209(e)(2) does not preempt any ordinance that regulates an activity simply because that activity involves an engine. To hold otherwise would mangle "Congress's carefully calibrated regulatory scheme," *EMA*, 541 U.S. at 255, and cast aside the presumption that "Congress does not cavalierly pre-empt" state law, *Farina*, 625 F.3d at 116. Even if Plaintiffs'

---

[8] Comparable actions have been brought in New Jersey asserting claims against townships under alternative constitutional grounds. In *New Jersey Landscape Contractors Ass'n v. Township of Maplewood*, plaintiffs claimed that Maplewood's ordinance's restrictions on gas-powered leaf blowers for commercial entities violated equal protection and constituted improper regulation under both the U.S. and New Jersey Constitutions. An amendment to the ordinance rendered Plaintiffs' claims moot, and the court dismissed the action. The court denied plaintiffs' request for attorneys' fees. No 17-8820, 2022 WL 1224942 (D.N.J. Apr. 26, 2022).

16

expansive interpretation of § 209(e)(2) were plausible, which it is not, the Court must nonetheless "accept the reading [of § 209(e)(2)] that disfavors pre-emption." *Bates*, 544 U.S. at 449.

In sum, the Ordinance regulates *leaf blowing*, not *leaf blower engine emissions*. The Ordinance does not require that leaf blower engines "must not emit more than a certain amount of a given pollutant, must be equipped with a certain type of pollution-control device, or must have some other design feature related to the control of emissions." *EMA*, 541 U.S. at 253. Nor does it enforce a standard dictating the same. Montclair enacted the Ordinance to protect its residents from the adverse health and environmental effects of leaf blowing, not the emissions generated by leaf blower engines, which is well within its police power. *N.J. Staffing All.*, 110 F.4th at 209; *Huron Portland Cement*, 362 U.S. at 442. The Court, accordingly, presumes Congress did not intend for CAA § 209(e)(2) to preempt the Ordinance. *Farina*, 625 F.3d at 116.

## D.    Dismissal with Prejudice

The Third Circuit ordinarily requires district courts to grant leave to amend a deficient complaint "unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). After the Court denied Plaintiffs' request for a preliminary injunction, Plaintiffs filed an Amended Complaint. (*See* Am. Compl.) Because the CAA does not preempt the Ordinance, Plaintiffs' legal theory of preemption retained within the Amended Complaint is fatally defective. This is a defect another pleading cannot cure. Accordingly, the Court denies Plaintiffs leave to amend and dismisses with prejudice the Amended Complaint.

## IV.    CONCLUSION

For the foregoing reasons, Montclair's motion to dismiss (ECF No. 61) is **GRANTED**, and Plaintiffs' Amended Complaint (ECF No. 55) is **DISMISSED** *with prejudice*. An appropriate Order accompanies this Opinion.

**DATED: 6/16/2026**

_____

**JULIEN XAVIER NEALS**
**United States District Judge**

18